JACOBOWITZ v. GITTELSON.

(Supreme Court, Appellate Term, First Department. June 29, 1916.)

1. APPEAL AND ERROR ☞1011(1)—REVIEW—FINDINGS.
 Where a conflict in evidence is a mere matter of veracity, the finding of the trial court will be accepted.
  [Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3983–3988; Dec. Dig. ☞1011(1).]

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

2. REPLEVIN ☞72—TITLE OF PLAINTIFF—EVIDENCE—SUFFICIENCY.

> In an action for replevin of a horse, alleged to have been hired by defendant and retained, where defendant testified that he had received the horse in payment for painting plaintiff's house, and it appears that, after defendant acquired title as alleged, defendant kept the horse in plaintiff's stable and paid for feeding, and that when he had hired the horse from plaintiff he had paid $2 per day and plaintiff supplied the feed, evidence *held* insufficient to support a verdict for plaintiff.

> [Ed. Note.—For other cases, see Replevin, Cent. Dig. §§ 292–295; Dec. Dig. ☞72.]

Appeal from Municipal Court, Borough of The Bronx, First District.

Action by Jake Jacobowitz against Morris Gittelson. Judgment for plaintiff, and defendant appeals. Reversed, and new trial ordered.

Argued June term, 1916, before GUY, BIJUR, and PHILBIN, JJ.

Neier & Van Derveer, of New York City, for appellant.

Heyert & Heyert, of New York City (Abraham Heyert, of New York City, of counsel), for respondent.

PHILBIN, J. The plaintiff sued in replevin to recover a horse alleged to have been wrongfully taken and detained by the defendant. The answer was a general denial.

The plaintiff was in the livery stable business, and had from time to time hired out horses to the defendant. He claimed that the horse in question had been so hired, but that defendant had refused to return it. The defendant contended that he entered into a contract with plaintiff by which it was agreed that defendant, who was in the painting business, should paint a house for the plaintiff, and that the latter should give the horse in compensation for the work; that thereupon the horse was delivered to defendant, and he duly painted the house. The plaintiff denied that any such transaction took place.

[1] After the defendant acquired title, as asserted by him, he kept the horse in plaintiff's stable and received bills from the plaintiff and dealers for feed until shortly before the time in December, 1915, when the plaintiff said the defendant acquired possession by hiring the horse. On behalf of the plaintiff, besides his own testimony, that of his daughter, a young woman, and a tenant of his, was given. The plaintiff and his daughter testified as to conversations with defendant in support of the theory that the hiring had taken place, and also said that defendant had finally declared he was going to keep the horse to secure himself as to money due him from plaintiff. The tenant also testified as to the alleged declaration. Besides the defendant himself, several other persons testified as to statements purporting to have been made by plaintiff which, if true, amply confirmed the defendant's version of the transaction. There was, therefore, a clear conflict of evidence, and, if it were a mere matter of veracity, the conclusion of the trial court should be accepted.

[2] The difficulty is, however, that the uncontradicted facts make the plaintiff's story well-nigh incredible. There is no explanation

given, for example, why the defendant paid the plaintiff for feeding the horse if it were only hired. The defendant testified without contradiction that when, on occasions preceding the alleged purchase, he hired the horse from the plaintiff, he paid $2 per day, and the plaintiff supplied the feed. Although the plaintiff said he had done business with the defendant for a long period prior to the dispute in December, there is nothing to indicate that the defendant did any hiring during his alleged period of ownership, beginning in the preceding June. It must be found that the judgment was against the weight of evidence. The consideration of the issues has not been facilitated upon this appeal by the aspersions which the counsel for the appellant has seen fit to cast upon the learned trial judge. His doing so must be ascribed to ignorance as to what was required of the court in the discharge of its duty. It is to be hoped that his lack of comprehension will be remedied by experience.

Judgment reversed, and new trial ordered, with $30 costs to appellant to abide the event. All concur.